IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Joseph M. Clark, | |
|       Plaintiff, | Case No. 2:12-cv-802 |
|   v. | Judge Graham |
| Shop24 Global, LLC, et al., | Magistrate Judge Kemp |
|       Defendants. | |

## OPINION & ORDER

Magistrate Judge Kemp, in a thorough and well-written report and recommendation (an "R&R"), recommended that the Court award Plaintiff Joseph Clark $139,517.50 in attorneys' fees and $2,869.12 in costs along with post-judgment interest. (R&R at 28, Doc. 130). Neither party is happy with the recommendation; both sides object. The Court will adopt almost all of the R&R.

**I. Background**

Plaintiff Joseph Clark sued his former employer, Shop24 Global, LLC ("Shop24 Global") and two related entities[1] for claims of unpaid overtime and retaliation under the Fair Labor Standards Act (the "FLSA") and failure to maintain records under the Ohio Constitution. (Pl.'s Third. Am. Compl., Doc. 55). The Court granted summary judgment against Mr. Clark on his retaliation claim and his joint-employer claim against defendant, RDO Equipment Co. ("RDO"). The jury found Shop24 USA, Inc.'s violation was not willful, so the statute of limitations barred a damages award on the claim against that defendant. (Op. & Order, Doc. 85). Clark proceeded to trial against Shop24 Global and, after a three-day trial, won a $61,978.46 judgment for his claim that Shop24 Global failed to pay him overtime. The record-keeping claim brought under the Ohio Constitution was not presented to the jury.

---

[1] Clark sued Shop24 Global, LLC; Shop24 USA, Inc.; and RDO Equipment Co. (Pl.'s Third Am. Compl., Doc. 55). In June 2010, Shop24 USA sold its assets to Shop24 Global, and the employees went with the assets. (Op. & Order on Summ. J. at 3, Doc. 85).

Clark then moved for an award of attorneys' fees and costs totaling $172,161.62. (Pl.'s Mot. for Atty. Fees, Doc. 119). Clark also moved for post-judgment interest. (Doc. 120). The Court referred the motions to the magistrate judge. (Doc. 129). A brief summary of the R&R is in order.

Magistrate Judge Kemp found Clark's attorneys' hourly rates to be reasonable: $275 per hour for Mr. Mansell and $225 per hour for Ms. Dyer. (*Id.* at 6). Magistrate Judge Kemp excluded a number of hours of billed time because those hours billed were too vague, (*id.* at 6–8), too clerical in nature, (*id.* at 8–11), unreasonable given the nature of the task, (*id.* at 11–12), were spent on unsuccessful motions, (*id.* at 18–21), were already compensated, (*id.* at 21–23), or unsupported by evidence and in excess of limitations on fee awards, (*id.* at 23–24). In total, the R&R recommends reducing the award of attorneys' fees by $32,644.12, to $139,517.50. Magistrate Judge Kemp did not apply an across-the-board reduction of the lodestar award. (*Id.* at 24–26). Magistrate Judge Kemp recommended awarding $2,869.12 in costs—most of Clark's costs except $950 in expert-witness fees. Clark and Shop24 Global lodged objections to Judge Kemp's R&R.

## II. Standard of Review

After a magistrate judge recommends a disposition, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The Court then reviews de novo those portions of the R&R to which either party objects. *Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed'n of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). The Court reviews for clear error those portions of the R&R to which no objection is made. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment; *see also Ward v. Dillard's*, No. 2:15-CV-2499-JPM-CGC, 2016 WL 1629405, at *3 (W.D. Tenn. Apr. 25, 2016). "[T]he Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Here, both parties object to portions of the R&R, and the Court will review these portions de novo, reviewing the remainder for clear error.

**III. Discussion**

    **A. Defendant's First Objection: the Magistrate's recommendation that all of Plaintiff's claims arise from a common core of facts should be rejected**

Magistrate Judge Kemp recommended that Clark should recover fees for work on unsuccessful claims because these claims were based on a common core of facts and related legal theories. Defendants argue that they shouldn't have to pay Clark's fees related to his unsuccessful—and unrelated—claims. Shop24 Global identifies the cost of these claims at about $26,000: $15,962.50 for an unsuccessful retaliation claim, $3,415 for unsuccessful claims against other defendants, and $8,482.50 for an unsuccessful record-keeping claim. Clark argues that while he didn't prevail on each discrete legal claim, the unsuccessful and the successful claims share a common core of facts and are based on related legal theories.

Teasing apart the hours worked on different claims from a lawsuit's inception to its conclusion is no easy task—it is sometimes impossible. Plaintiffs wisely plead in the alternative, pursue various avenues of discovery, and present a variety of legal theories. So what's a court to do when the plaintiff only prevails on one out of several legal claims? Award fees for the entire litigation? Here's the answer: when "the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories. . . . it [is] difficult to divide the hours expended on a claim-by-claim basis," so the solution is to "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Defendants point out the facts unique to each claim, and such facts do exist. But just because each claim requires some unique facts doesn't mean that the legal theories aren't related or that the failed claims don't share a common core of facts with the successful claims. Typically, if Courts see overlap in the facts relevant to two claims, the claims are considered related. *See, e.g.*, *Butts v. McCullough*, No. 3:02-0164, 2005 WL 3620580, at *3 (M.D. Tenn. Oct. 21, 2005) ("[T]he successful retaliation claim and the unsuccessful discrimination claims arise out of the same core set of facts involving plaintiff's attempts to seek employment with the TVA."), *report and recommendation adopted*, No. 3:02-0164, 2006 WL 47442 (M.D. Tenn. Jan. 4, 2006). But when "many of the depositions and legal arguments pursued in conjunction with" a failed claim are not relevant to the successful claim, and the plaintiff's overall success is even further limited,

a reduction may be appropriate. *See Kirby v. Grand Traverse Cty. Sheriff's Dep't*, No. 1:07-CV-566, 2009 WL 3234147, at *2 (W.D. Mich. Sept. 30, 2009).

Here, the retaliation claim was based on Clark complaining to his employer about the hours he was working and his right to overtime compensation. The background facts supporting these statements are the facts that supported Clark's claim for unpaid overtime. To be sure, Clark's retaliation claim required some unique facts that were not essential to the other claims, but that's not the test. Admittedly, the legal theories are different and require different proofs. But since the two claims arise out of the same core of facts, the Court will not reduce fees for the failed retaliation claim.

Similarly, the claims against Defendants RDO and Shop24 USA were based on related legal theories and the same core of facts. Clark asserted his claims against three different entities, but the Court held that RDO was not Clark's employer and the jury eliminated the claim against Shop24 USA by finding its violation was not willful. Shop24 Global argues the time spent researching successor or joint-employer liability has nothing to do with the successful claim. Ultimately, yes. But to the extent that these theories are alternative legal grounds for the same result, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters." *Hensley*, 461 U.S. at 435. Clark brought the same claims against all three companies. The failure of these claims against alternative defendants doesn't merit a reduction of fees.

Finally, Shop24 Global argues that Clark's record-keeping claim, authorized by the Ohio Constitution, involves a completely different legal theory than Clark's successful claim, and it focuses on an entirely different issue. While there are discrete proofs required by a record-keeping claim that may not be relevant to a failure-to-pay-overtime claim; in this case, Magistrate Judge Kemp zeroed in on exactly the core of facts common to the record-keeping claim and the successful claim: if Defendants properly classified Clark as exempt from the overtime requirements, then they didn't need to maintain wage-and-hour records for him. The record-keeping claim is tethered to one of the key factual issue at trial: whether Clark was an exempt employee under the FLSA.

Therefore, no deduction is proper here because the retaliation claim, the claims against the other defendants, and the Ohio record-keeping claim are all based on a common core of facts or are based on related legal theories.

Shop24 Global's first objection is **OVERRULED** and this portion of the R&R is **ADOPTED**.

### B. Defendant's Second Objection: the Magistrate's recommendation to reject Defendants' proposed 40% reduction from the lodestar due to Plaintiff's limited success should be rejected

After determining the lodestar, the Court can adjust the award to "reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). But, "a strong presumption favors the prevailing lawyer's entitlement to his lodestar fee." *Id.* at 350. The degree of success obtained is the "most critical factor" in determining whether and how much to award in attorneys' fees. *Hensley*, 461 U.S. at 436. The importance of the "degree of success" analysis is magnified by the Court's finding that the failed claims share a common core of facts with the successful claims. Since the Court can't tease apart the hours, it must focus on the overall relief. *See id.* at 435.

Shop24 Global focuses on Clark's degree of success to argue that the Court should reduce the award of attorneys' fees by 40%. Clark responds that he achieved 94% of the available damages he sought—great success, especially when compared to the cases Shop24 Global cites where courts reduced fees for lack of success.

The Court considers the following twelve factors when analyzing whether it should adjust the lodestar award of attorneys' fees:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n.3 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974)).

Shop24 Global argues that factors one through three counsel in favor of reducing the fee. Shop24 Global argues that this was a simple case, with only standard legal skills required to litigate the matter. Shop24 Global argues that it spent 413 hours litigating the case while Clark spent 647.9 hours. Clark's hours, Shop24 Global says, are excessive; therefore, his fee award should be reduced to reflect the reasonable time and labor required given the skill required and the difficulty of the questions presented.

Factors four through seven and nine through eleven appear to not influence the analysis, either because of a lack of evidence or lack of analysis by the parties.

Factor eight is the most important, "the amount involved and the results obtained." *Id.* Shop24 Global looks to the $61,978.46 damages award and observes that similar awards merited much lower attorneys' fee awards. Clark looks to his 94% success rate[2] in this case to prove his success. Shop24 Global also argues that Clark prevailed on only one of his twelve claims, which shows limited success. But the details of these claims belie that conclusion, and it would be error for the Court to adopt this type of mathematical approach to reduce the fee accordingly. *Id.* at 435 n.11 (rejecting a mathematical approach that compares the number of issues on which a plaintiff prevails to the total number of claims he pleaded).

Shop24 Global urges the Court to consider the results obtained in light of the amount involved and awards in similar cases. Doing so, the Court sees two things out of balance. First, the requested attorneys' fees in this case are almost three times the amount of the jury award that Clark himself calls 94% success. Second, awards in similar cases show a balance between awards to plaintiffs and awards to plaintiffs' lawyers. Clark argues that none of Shop24 Global's comparison cases involve a plaintiff who received 94% of the damages he sought. Moreover, this factor is just one of the twelve *Johnson* factors, and alone it cannot be determinative.

While Clark achieved much of what he was looking for, ultimately this case was about money. When attorneys' fees far exceed damages, "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended" must be the focus of the Court's attention. *Dean v. F.P. Allega Concrete Const. Corp.*, 622 F. App'x 557, 559 (6th Cir. 2015) (vacating $25,422 fee award when plaintiff received only $117). But, fee awards may outpace damages awards. *See, e.g.*, *Fegley v. Higgins*, 19 F.3d 1126, 1130 (6th Cir. 1994) (upholding $40,000

---

[2] Clark derives this percentage, it appears, as the amount of money he received divided by the amount of money he requested. Apparently the missing 6% is what he believes he would have recovered for his retaliation claim.

fee award for $7,680 in damages, but reversing and remanding for consideration of additional damages and attorney's fees); *Diaz v. Romita*, No. 05-70928, 2007 WL 881509, at *5 (E.D. Mich. Mar. 22, 2007) (awarding $60,150 in fees after $2,000 damage award in excessive-force case).

Here, the award of fees is more than twice the jury's damages award. But Courts have upheld awards with far greater disparities between the fee award and the damages award. *See, e.g.*, *Fegley*, 19 F.3d at 1130. And while the award is out of step with the cases Shop24 Global cites, those cases all based a percentage reduction on a serious lack of success, something not present in this case. Clark achieved a good result, but he did not succeed on his retaliation claim or his record-keeping claim. Moreover the number of hours Clark's lawyers expended significantly exceeded what Shop24 Global's lawyers expended on the litigation. This implicates the first three *Johnson* factors; the time and skill required to litigate these relatively straight-forward issues counsels in favor of a slightly reduced award. Relative success tempered by an excessive number of hours expended on the litigation counsels in favor of a minor reduction. The Court will therefore reduce the attorneys' fee award by 10%. Accordingly, Shop24 Global's second objection is **SUSTAINED IN PART** and the R&R is **MODIFIED**.

### C. Defendant's Third Objection: the Magistrate's recommendation to allow Plaintiff compensation for ensuring that his fee application did not include duplicative or redundant time entries should be rejected

"[T]ime spent in preparing, presenting, and trying attorney fee applications is compensable . . . ." *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986) *abrogated on other grounds by The Ne. Ohio Coal. for the Homeless v. Husted*, No. 14-4083, 2016 WL 4073489 (6th Cir. Aug. 1, 2016). The question is this: should Clark's attorneys be paid for cleaning up their billing statements to not include duplicates or redundant time. Magistrate Judge Kemp viewed the time as time reasonably spent in connection with preparation of the fee application. Indeed, if Clark's lawyers hadn't done so, their request would have been met with vigorous opposition. But if they spent more time removing entries than those entries were worth, then this time would be a waste and wholly unreasonable. It's impossible to know whether or not this is the case because it's not clear how many hours they removed from their billing statements: Clark's lawyers spent 1.8 hours "reviewing time entries; deleting duplicates or redundant time." These were not mere scrivener's errors; these were entries where both attorneys "spent signifi-

cant amounts of time working on the same task" or where both attorneys attended meetings or phone calls where the presence of only one attorney would have been sufficient. (Mansell Aff. at ¶¶ 10–11, Doc. 119-2; Dyer Aff. at ¶¶ 7–8, Doc. 119-4). Because the affidavits refer to deleting entries for multiple tasks, meetings, and telephone calls, the Court infers that Clark's attorneys produced a net reduction in the number of hours on the final fee application. Therefore, this time was reasonably spent in preparation of the fee application and is permitted. Shop24 Global's third objection is **OVERRULED,** and the Court **ADOPTS** this portion of the R&R.

### D. Plaintiff's First Objection: the Magistrate should not have deducted fees for "unsuccessful motions"

Magistrate Judge Kemp recommended $20,477.50 be deducted from Clark's request for fees for work on unsuccessful motions. Included in this amount is work on Clark's failed motion for summary judgment and an ancillary opposition to Defendants' motion to strike Clark's motion. Clark moved for summary judgment on his failure-to-pay-overtime claim, arguing specifically for summary judgment on his claim that Defendants misclassified him as an exempt employee. (Pl.'s Mot. Summ. J. at 2). Clark lost, as the Court viewed the issue as a "classic factual dispute that a jury must resolve at trial." (Op. & Order at 21).

Now, Clark argues that his motion helped narrow issues for trial, saved time on his own trial preparation, and saved time on his preparation of his response to Defendants' motion for summary judgment. Additionally, Clark argues that he should be compensated for successfully opposing Defendants' motion to strike his motion for summary judgment.

> On summary judgment motions and other similar motions that go to a particular issue in a case, the question should be whether the person seeking compensation prevailed on the motion or in the end prevailed on the issue raised in the motion in part as a result of the motion.

*Coulter*, 805 F.2d at 151.

Here, Clark did not prevail on the motion, nor did his motion contribute to his victory at trial. He sought summary judgment on an issue with a clear dispute of material facts: whether he was an exempt employee. It is true that in response to Clark's motion, Defendants abandoned the "learned professional" exemption and narrowed the application of the "executive" exemption, but, as a brief survey of the summary judgment briefs and the Court's opinion show the "administrative" exemption was the crux of the case, and that issue presented a factual dispute for the jury. Ultimately, Clark prevailed on that issue, but his motion for summary judgment didn't con-

8

tribute to that victory. The only other time saving Clark identifies is that he copied and pasted his statement of facts from his motion for summary judgment to his response to Defendants' motion for summary judgment. But the billing statements don't contain enough detail for the Court to discern how much time Clark saved, so the Court can't grant a reprieve on this issue. In short, Clark's work on his motion for summary judgment did not contribute to his victory on the administrative-exemption issue at trial and is therefore not compensable.

Clark raises another issue: he defeated Defendants' motion to strike his motion for summary judgment, and he should be paid for his efforts. True, he successfully opposed this motion. But the motion to strike would never have been filed had Clark not filed his ill-fated motion for summary judgment. Since the work opposing the motion to strike cannot be viewed outside of the context of the motion for summary judgment, the Court will not permit Clark to recover fees for his work associated with the motion to strike.

Therefore, Clark's first objection is **OVERRULED**, and the R&R is **ADOPTED**.

### E. Plaintiff's Second Objection: Clark should be awarded fees for time spent on his reply in support of his fee application

Magistrate Judge Kemp refused to award fees for time spent on Clark's reply in support of his fee application—$6,985. Magistrate Judge Kemp based his refusal on two grounds: first, Clark provided no evidentiary support for the time spent; and second, then-controlling Sixth Circuit precedent capped the number of hours allowed for preparing and litigating the attorneys' fee case at 3% absent exceptional circumstances or a trial. *See Coulter*, 805 F.2d at 151.

Recently, the Sixth Circuit abrogated its 3% cap on the number of "hours allowed for preparing and litigating the attorney fee case." *The Ne. Ohio Coal. for the Homeless v. Husted*, No. 14-4083, 2016 WL 4073489, at *28 (6th Cir. Aug. 1, 2016) (abrogating *Coulter*, 805 F.2d at 151). Instead of applying the 3% cap, the Sixth Circuit "remand[ed] to the district court to determine reasonable attorneys' fees for the hours expended by Plaintiffs in seeking their fee award." *Id.* So, through no fault of Magistrate Judge Kemp, this reasoning in the R&R no longer holds water.

The other question is whether Clark provided evidence of his hours worked on the reply brief. Clark attached as an exhibit to his reply a one-page billing sheet. (Doc. 122-1 at 32). He attached no affidavit, like he had done for other billing statements. Shop24 Global objects, arguing that the billing statement is not proper "evidence supporting the hours worked and rates

9

claimed." *Hensley*, 461 U.S. at 433. It's not proper evidence, Shop24 Global says, because Clark didn't provide an "affidavit, declaration, or make any other attempt to provide an adequate evidentiary foundation for the hours that were purportedly incurred." (Defs.' Sur-Reply at 41, Doc. 123-1).

Clark responds that he complied with the generic requirement that his hours be documented with "sufficient detail and probative value to enable the court to determine" whether such hours should be compensated. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008). True. But that documentation must come with the indicia of reliability that affidavits, proper declarations, and other verified documents have. Clark asks the Court to look at the previous affidavits he filed, all of which state essentially the same thing, for proof that his supplemental time sheet is reliable evidence of his actual time. Clark points out that his affidavits show how he keeps his records and the basis for his hourly rate. (*See, e.g.*, Mansell Aff., Doc. 119-2). But the time sheet in question is not authenticated with an affidavit. Since it is not authenticated, it is not adequate evidence of Mr. Mansell's compensable time. The Court finds that this is not adequate evidentiary support for Clark's fees associated with the reply. Therefore, Clark's second objection is **OVERRULED**, and the R&R is **ADOPTED**.

However, Clark may supplement the record with an appropriate affidavit and move for reconsideration of this portion of the Court's order at that time.

### F.  Plaintiff's request for an increase in hourly rate for all hours expended

Clark also moves to adjust his hourly rate from $275 per hour to $300 per hour "on all hours previously expended in this matter to conform with his current hourly rate." (Doc. 133 at 19). Recently, Magistrate Judge Litkovitz found $300 to be a reasonable hourly rate for Mr. Mansell in a different case. *Lankford v. Reladyne, LLC*, No. 1:14-CV-682, 2016 WL 3640691, at *3 (S.D. Ohio June 29, 2016). But Mr. Mansell wants $300 per hour for all his work, even work that pre-dates the first time he was awarded $300 per hour, even work for which he said he should be paid $275 per hour.

Shop24 Global urges the Court to reject this after-the-fact change for two reasons: first, because Mansell already represented, and the R&R recommended, that he should be paid $275 per hour; second, because Plaintiff's request for an increased hourly rate came long after the fee application, indeed a month after the R&R was filed.

10

The short answer is that Clark's request for increased fees is too late. The doctrine of judicial estoppel prevents a party from maintaining one position, prevailing on that issue, and then changing positions later to his benefit. *Watkins v. Bailey*, 484 F. App'x 18, 20 (6th Cir. 2012). This equitable doctrine is not precisely defined, but the point is "to protect the integrity of the judicial process." *Edwards v. Aetna Life Ins.*, 690 F.2d 595, 598 (6th Cir. 1982). Three factors are key to this analysis: (1) has the party taken two clearly inconsistent positions; (2) has the Court accepted the first position such that accepting the second would create the perception that it was misled in one of its rulings; and (3) would it create an unfair advantage or would a detriment result. *Watkins*, 484 F. App'x at 20 (citing *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001)).

Here, Clark has taken two, not opposite, but inconsistent positions: his reasonable hourly rate is $275 per hour or $300 per hour; both might be reasonable, but they are not the same. Shop24 Global and Magistrate Judge Kemp accepted his rate of $275 as reasonable, and accepting the second could create the perception that the Court was misled. Third, and importantly, his change of rate would cause a detriment because the matter has already been subject to the briefing process and an R&R without investigation of whether the higher hourly rate is reasonable. Permitting this now would allow Clark to avoid close scrutiny of his hourly rate by slipping it in after Shop24 Global made its arguments and Magistrate Judge Kemp performed a thorough analysis. He should have asked for it in his fee application. Shop24 Global's motion to strike Clark's request for an increased hourly rate is hereby **GRANTED**. (Doc. 135).

But even if the Court considered his supplemental fee request timely filed, since only recently was Mr. Mansell awarded a higher hourly rate, Mr. Mansell should receive his historic, and not current, rates.

Clark's substantive argument is this: awarding increased rates is appropriate to counterbalance a delay in payment. Courts may do this. *See, e.g.*, *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). It is within the district court's wide discretion to award a "reasonable" fee to either award historic rates, *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617–18 (6th Cir. 2007) (affirming award of historic rates because district court found that use of "current rates would produce a windfall."), or current rates, *Barnes*, 401 F.3d at 745 (affirming award of current rates to compensate for delay in payment after litigation persisted for nearly six years). A

11

court must simply explain "how its award balance[s] the competing goals at issue in calculating reasonable fees." *Gonter*, 510 F.3d at 617.

Here, the delays in payment that justified higher rates are not present and the use of current rates would produce a windfall to Clark's attorney. The judgment was filed a little more than a year ago and much briefing on the issue of attorneys' fees occurred in the interim. The Court can see no justification in awarding a higher fee and finds $275 to be a reasonable rate for Mr. Mansell given his experience and the Court's appraisal of his work. This applies to all of Mr. Mansell's work, including his work done after the R&R was filed.

### G. Plaintiff's supplemental requests for fees

Having discussed the fees leading up to the R&R, now the Court must discuss the fees that have come since. Clark requests supplemental fees for four separate filings: (1) $2,460 for filing his objections to the R&R, (Doc. 132); (2) $6,630 for his response to Shop24 Global's objections to the R&R, (Doc. 133); (3) $630 for filing supplemental authority, (Doc. 134); and (4) $660 for his response to Shop24 Global's motion to strike, (Doc. 136). The Court granted Shop24 Global's motion to strike on basic procedural grounds. Therefore, the Court declines to award fees for Clark's response to that motion. The Court turns to the first three supplemental requests.

Again, "time spent in preparing, presenting, and trying attorney fee applications is compensable . . . ." *Coulter*, 805 F.2d at 151. Objecting to an R&R, responding to an opponent's objections, and filing highly relevant supplemental authority are all reasonable expenditures of an attorney's time and are compensable. These are compensable, however, at Mr. Mansell's historic rate: $275 per hour. Therefore, the Court will award $2,255 for filing objections to the R&R, $6,077.50 for filing a response to Shop24 Global's objections to the R&R, and $577.50 for filing supplemental authority. In total, the Court adds $8,910 to the fee award.

### H. Balance of the R&R

The Court finds nothing else in the R&R to be infected with clear error. Accordingly, the balance of the R&R, including the recommendation of an award of post-judgment interest is **ADOPTED**.

IV. **Conclusion**

The R&R is hereby **ADOPTED IN PART AND MODIFIED IN PART**. (Doc. 130). Accordingly, Clark's motion for attorneys' fees and costs is **GRANTED IN PART AND DENIED IN PART**. (Doc. 119). Clark's motion for post-judgment interest is **GRANTED**. (Doc. 120). Clark is hereby awarded $134,475.75 in attorneys' fees and $2,869.12 in costs.

90% of $139,517.50 = $125,565.75. $125,565.75 + $8,910 = $134,475.75.

Shop24 Global's motion to strike is **GRANTED**. (Doc. 135).

Plaintiff may file an affidavit in support of his fees associated with his reply brief in support of his fee application by October 7, 2016 along with a motion for reconsideration of only section III.E. of this order.

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 30, 2016